## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FRIENDLY HOTEL BOUTIQUE CORPORATION, | CIVIL NO. |
| Plaintiff, | RICO ACT; FRAUD; BREACH OF CONTRACT; NEGLIGENCE |
| v. | JURY TRIAL DEMANDED |
| ME&A CAPITAL, LLC; DEON WALKER aka RODNEY WALKER aka RODNEY DEON WALKER; DELLOVO CAPITAL CORPORATION; INTERNATIONAL LENDING GROUP, LLC; EQUITY MORTGAGE CORP.; ABC INSURANCE COMPANY; DEF INSURANCE COMPANY and XYZ INSURANCE COMPANY, | |
| Defendants. | |

### COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff, FRIENDLY HOTEL BOUTIQUE CORPORATION ("Friendly Hotel"), through the undersigned attorneys and respectfully, STATES, ALLEGES, and PRAYS as follows:

### JURISDICTION & VENUE

1.     This Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, federal question jurisdiction, inasmuch as the claims herein involve the provisions

of the Racketeer Influenced and Corrupt Organization Act, 28 U.S.C. § 1962 *et. seq.* ("RICO Act").

2.      Alternatively, this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332, diversity jurisdiction, as to all defendants other than Equity Mortgage Corp., inasmuch as the Plaintiff and all defendants other than Equity Mortgage Corp. are citizens of different states and the amount in controversy exceeds $75,000.00.

3.      This Court has supplemental jurisdiction over claims arising under the laws of the Commonwealth of Puerto Rico pursuant to 28 U.S.C. §1967, as those claims arise from a common nucleus of operative fact with the federal claim.

4.      Venue in this Court is proper pursuant to 28 U.S.C. §1391 inasmuch as the Plaintiff is located in this district and a substantial part of the events and omissions giving rise to the claim took place in the Commonwealth of Puerto Rico.

## THE PARTIES

5.      Plaintiff, Friendly Hotel Boutique Corporation ("Friendly Hotel"), is a corporation duly organized and existing under the Laws of the Commonwealth of Puerto Rico, with a principal place of business located at Guaynabo, Puerto Rico.

6.      Defendant ME&A Capital, LLC ("ME&A") is a for-profit limited liability company organized under the laws of and a citizen of the State of Georgia with a principal place of business in Lithonia, Georgia.

7.      Defendant Deon Walker, also known as Rodney Walker, also known as Rodney Deon Walker ("Walker"), is an individual, organizer and manager and/or the managing partner of ME&A Capital, LLC and is a resident and citizen of the State of Georgia.

8.      Defendant Dellovo Capital Corporation ("Dellovo") is a for-profit corporation organized under the laws of and a citizen of the Commonwealth of Massachusetts with a principal place of business in Lexington, Massachusetts.

9.      Defendant  International Lending Group, LLC ("International Lending") is a for-profit limited liability company organized under the laws of and a citizen of the State of Arizona with a principal place of business in Phoenix, Arizona.

10.     Defendant Equity Mortgage Corporation ("Equity") is a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico with a principal place of business in San Juan, Puerto Rico.

11.     ABC Insurance Company, DEF Insurance Company and XYZ Insurance Company are fictitious names for currently unknown insurance companies which issued policies covering the defendants for their wrongful acts in this case.

## FACTS COMMON TO ALL CAUSES OF ACTION

12.     On or about December 16, 2008, Antonio José Morales Padilla entered into an "Agreement of Option to Purchase and Sell" with Terrance Eugene Goins McNally and

Jacques Corsia Touati ("Sellers"), which granted Morales Padilla an option to purchase real property in Condado, Puerto Rico known as the Atlantic Beach Hotel by June 15, 2009 for the price of $6,500,000. The option required the payment of a non-refundable fee of $100,000, which was paid to the sellers. The option could be extended for a term of 60 additional days upon the payment of an additional $50,000 to the Sellers.

13.     On or about June 16, 2009 Morales Padilla and the Sellers executed the "First Amendment to Agreement of Option to Purchase and Sell and Assignment and Acknowledgment." That agreement provided that the December 16, 2008 "Agreement of Option to Purchase and Sell" would be assigned by Morales Padilla to Friendly Hotel and that the term to exercise the option would be extended for a period of 60 days upon payment of the additional $50,000 fee, which was paid to the Sellers by Friendly Hotel.

14.     Following the execution of the "Agreement of Option to Purchase and Sell" and the "First Amendment to Agreement of Option to Purchase and Sell and Assignment and Acknowledgment," Friendly Hotel attempted to secure financing for the purchase of the hotel from the Banco de Desarrollo Economico de Puerto Rico, but was ultimately unable to obtain financing from that entity.

15.     In February 2010, Friendly Hotel approached defendant Equity Mortgage in search of financing for the project.

16.     Equity requested and received a fee of $500, as a loan application fee, from Friendly Hotel. At that time, Equity represented to Friendly Hotel that it was acting as a potential lender through a secondary market.

17.     Following payment of the loan application fee, Equity began requesting financial documentation from Friendly Hotel that was in the nature of due diligence documentation, and Equity continued to represent to Friendly Hotel that it was acting as a lender on behalf of a secondary market.

18.     On March 25, 2010, Equity Mortgage issued a Preliminary Commitment Letter to Friendly Hotel, stating that the financing for the project, totaling $6,965,880 would be obtained through defendant Dellovo Capital Corporation or its corporate investors. The Preliminary Commitment required Friendly Hotel to pay a $7,500 non-refundable fee for corporate due diligence upon acceptance of the Preliminary Commitment; a second, non-refundable fee of $7,500 for processing and underwriting which was due upon Friendly Hotel's acceptance of Dellovo's investor's term sheet; two points to be paid to the investor; and two points to be paid to Dellovo at closing.

19.     The Preliminary Commitment Letter was accepted by Friendly Hotel, and Friendly Hotel paid the initial installment of the due diligence fee of $7,500.

20.     On or about April 30, 2010, Harry Saul, vice-president of Dellovo, forwarded a Preliminary Term Sheet from defendant International Lending Group to Friendly Hotel.

The Preliminary Term Sheet stated that International Lending Group was interested in providing $9.8 million in financing for the purchase of the hotel. It provided that upon acceptance of the Term Sheet, Friendly Hotel would pay International Lending Group $14,750 for initial due diligence and underwriting costs plus first class travel and hotel expenses for site visits.

21.     The acceptance of the Preliminary Term Sheet also required Friendly Hotel to pay Dellovo the second installment of the due diligence fee of $7,500 as required by the Preliminary Commitment.

22.     Friendly Hotel accepted the Preliminary Term Sheet and paid International Lending Group $14,750. It also paid Dellovo the second installment of the due diligence fee of $7,500. Equity, Dellovo and International Lending Group represented to Friendly Hotel that International Lending Group was acting as a lender and not as a mortgage or loan broker.

23.     In reliance upon the Preliminary Term Sheet, on or about May 10, 2010 Friendly Hotel and the Sellers executed a "Second Amendment to Agreement of Option to Purchase and Sell." That agreement reinstated and modified the "Agreement of Option to Purchase and Sell" and the "First Amendment to Agreement of Option to Purchase and Sell and Assignment and Acknowledgment." It provided that the sale price of the Atlantic Beach Hotel was increased to $6,550,000, that the previously paid option deposit of

$175,000 would be applied to the purchase price of the hotel, and that the option period would expire on July 10, 2010, among other provisions.

24.     On or about July 1, 2010, International Lending Group forwarded a "Conditional Commitment" issued by defendant ME&A that proposed to lend Friendly Hotel $9.8 million at 8% interest over a term of 48 months.

25.     Up until this time, International Lending Group had never indicated that it was acting as a broker for the loan; to the contrary, Equity, Dellovo and International Lending Group represented to Friendly Hotel that International Lending Group would be providing the financing directly.

26.     The "Conditional Commitment" was the first time that Friendly Hotel was advised that ME&A would be the entity that would actually be lending the money.

27.     The "Conditional Commitment" identified International Lending Group as a broker for both Friendly Hotel and ME&A on the loan.

28.     The "Conditional Commitment" required the payment by Friendly Hotel of an initial deposit of $27,861 upon execution of the Commitment, which was to be used for actual expenses incurred in connection with third-party reports and other lender expenses.

29.     Friendly Hotel accepted the "Conditional Commitment."

30.     Also, on or about July 1, 2010, International Lending Group issued a "Loan Commitment" in its own name, in which it offered financing for the purchase of the

Atlantic Beach Hotel in the amount of $9.8 million at 8.0% for a term of 48 months, to be

closed within 30 days of acceptance.

31.     Friendly Hotel accepted the "Loan Commitment."

32.     On July 2, 2010, Friendly Hotel paid the initial deposit of $27,871 required by

both the "Conditional Commitment" and the "Loan Commitment" by wire transfer to

International Lending Group.

33.     In July 2010, RJ Joksch of International Lending Group traveled to Puerto

Rico, where he stayed for approximately two weeks, ostensibly to perform the required

due diligence on the proposed loan. He visited the Atlantic Beach Hotel during that trip.

34.     All of RJ Joksch's expenses for this trip to Puerto Rico, including his airline

tickets and hotel expenses, were paid by Friendly Hotel.

35.     In August 2010, defendant Walker traveled to Puerto Rico, ostensibly to

perform the required due diligence on the proposed loan. He visited the Atlantic Beach

Hotel during that trip.

36.     On September 9, 2010, ME&A Capital issued a Loan Commitment to Friendly

Hotel. The Loan Commitment provided that ME&A would lend Friendly Hotel $9.8 million

at a rate of 9.25% for a term of 36 months. It further provided that the loan would be closed

no later than October 31, 2010. The Loan Commitment was signed by defendant Deon

Walker as Managing Partner of ME&A Capital.

37.     On September 17, 2010, Friendly Hotel accepted the Loan Commitment and it was executed by Eugenio Morales, President of Friendly Hotel.

38.     ME&A Capital did not close the loan by the deadline of October 31, 2010.

39.     Friendly Hotel communicated continuously with the defendants by phone, e-mails and in writing to inquire as to the status of the loan.

40.     Defendant Walker personally and through his local counsel in Puerto Rico continually assured Friendly Hotel that the loan would be funded, while providing a myriad of excuses why the funding had not yet materialized.

41.     On February 7, 2011, counsel for Friendly Hotel was told by ME&A Capital's local counsel that the funds for the loan were being wire transferred to the escrow agent that day and would be available as of 3:00 p.m. AST. However, the funds were not transferred.

42.     In anticipation of the closing of the transaction, the parties to the sale had performed all of the following tasks: opened the escrow account; prepared the financing guaranty; opened a VISA account so that the hotel could begin operations immediately after closing; interviewed the hotel employees concerning employment with the new administration; issued a Pro-Forma Title policy; prepared the loan closing statement and obtained flood and hazard insurance policies.

43.     On February 11, 2011, defendant Walker wrote to Friendly Hotel and indicated that he anticipated the funds to be available within 2 - 3 days.

44.     On February 23, 2011, Friendly Hotel was advised by counsel for the Sellers that if the purchase was not closed before February 28, 2011, the Sellers would terminate the option agreement and retain the deposit of $175,000.

45.     On April 28, 2011, counsel for Friendly Hotel wrote to the defendants, advising them that if the loan funds wee not disbursed as promised by May 6, 2011, they would file suit in the federal and commonwealth courts.

46.     On May 24, 2011, counsel for ME&A Capital sent an e-mail to counsel for Friendly Hotel, advising that the loan funds would be deposited with the escrow agent the following day. They were not deposited.

47.     On May 24, 2011, Friendly Hotel filed a civil action with claims similar to this complaint in the United States District Court for the District of Puerto Rico under Civil No. 11-01481 (DRD). However, that complaint was not served on any of the parties.

48.     Following the filing of the complaint, from June 3, 2011 to June 23, 2011, counsel for ME&A Capital continually advised counsel for Friendly, by both phone and e-mail, that the transfer of the funds was imminent and required only approval from the U.S. Treasury Department, as the supposed funds were supposedly being transferred from the Bank of China.

49.     On June 24, 2011, counsel for ME&A Capital advised, via e-mail, that the U.S. Treasury Department approval had been obtained and that proof of funds would be available on Tuesday, June 28, 2011. She also requested that the federal complaint be voluntarily dismissed.

50.     Based on the representation that the transfer of funds to ME&A Capital had been approved by the federal government (which until that time, was the only issue mentioned by ME&A Capital or its counsel as delaying the transaction), and in a show of good faith, Friendly Hotel voluntarily dismissed the federal complaint without prejudice on June 24, 2011.

51.     On June 28, 2011, counsel for ME&A Capital advised, via e-mail, that proof of funds and the expected date of the wire transfer to the escrow agent would be available the next day, June 29, 2011.

52.     On June 30, 2011, counsel for ME&A Capital advised, via e-mail, that Mr Walker was "trying to obtain flight for NY today. Bank requested signature on various documents before they provided access code to his account through Internet, I do expect POF tidY [sic] after his visit to bank."

53.     That same day, Friendly Hotel, through counsel, advised counsel for ME&A Capital via e-mail that they were giving Mr. Walker and ME&A Capital until the close of

business Tuesday, July 5th, to provide satisfactory evidence that the transaction was funded and would be completed shortly.

54.     As of the filing of this complaint, the defendants have not provided the funds for the loan as required by the September 9, 2010 Loan Commitment.

55.     Defendants ME&A Capital, LLC, Deon Walker (aka Rodney Walker aka Rodney Deon Walker), Dellovo Capital Corporation and International Lending Group, LLC are not authorized to do business in Puerto Rico by the Puerto Rico Department of State.

56.     Defendants ME&A Capital, LLC, Deon Walker (aka Rodney Walker aka Rodney Deon Walker), Dellovo Capital Corporation and International Lending Group, LLC are not authorized by or registered with the Puerto Rico Office of the Commissioner of Financial Institutions to act as mortgage lenders, mortgage brokers, investment advisors, investment companies or venture capital funds.

### FIRST CAUSE OF ACTION - VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1961, *et. seq.*

57.     The plaintiff repeats and realleges the allegations of Paragraphs 1 - 56 as if set forth at length herein.

58.     Defendants ME&A Capital, LLC, Deon Walker (aka Rodney Walker aka Rodney Deon Walker), Dellovo Capital Corporation, International Lending Group, LLC and Equity Mortgage Corp. are persons within the definition of the Racketeer Influenced and Corrupt Organizations Act ("RICO Act"), 18 U.S.C. § 1961(3).

59.     Defendants ME&A Capital, LLC, Deon Walker (aka Rodney Walker aka Rodney Deon Walker), Dellovo Capital Corporation, International Lending Group, LLC and Equity Mortgage Corp. together constituted an association-in-fact enterprise affecting interstate commerce within the definition of the RICO Act, 18 U.S.C. § 1961(4).

60.     Defendants ME&A Capital, LLC, Deon Walker (aka Rodney Walker aka Rodney Deon Walker), Dellovo Capital Corporation, International Lending Group, LLC and Equity Mortgage Corp. conducted, participated in, operated and managed the association-in-fact enterprise.

61.     Defendants ME&A Capital, LLC, Deon Walker (aka Rodney Walker aka Rodney Deon Walker), Dellovo Capital Corporation, International Lending Group, LLC and Equity Mortgage Corp.'s participation in the association-in-fact enterprise was through a pattern of racketeering activity, including but not limited to violations of 18 U.S.C. §1341 (mail fraud), 18 U.S.C. §1343 (wire fraud) and 18 U.S.C. § 1344 (bank fraud), in violation of 18 U.S.C.§1962(c).

62.     Specifically, Defendants ME&A Capital, LLC, Deon Walker (aka Rodney Walker aka Rodney Deon Walker), Dellovo Capital Corporation, International Lending Group, LLC and Equity Mortgage Corp. participated in a continuous, long-standing scheme to defraud the Plaintiff by representing that they and/or defendant ME&A Capital

would provide funding for a loan to purchase the Atlantic Beach Hotel, all the time

knowing that none of them had the capacity or financial ability to fund the loan.

63.     In reliance upon the fraudulent representations of Defendants ME&A Capital,

LLC, Deon Walker (aka Rodney Walker aka Rodney Deon Walker), Dellovo Capital

Corporation, International Lending Group, LLC and Equity Mortgage Corp., the Plaintiff

paid more than $70,000 in fees and expenses to the defendants.

64.     The defendants' false representations and fraudulent scheme were advanced

through the use of the U.S. Mail and wires, in violation of 18 U.S.C. §1341 and 18 U.S.C.

§1343.

65.     Additionally, the defendants' false or fraudulent pretenses enabled them to

obtain money under the custody or control of, a financial institution, in violation of 18

U.S.C. § 1344.

66.     Defendants ME&A Capital, LLC, Deon Walker (aka Rodney Walker aka

Rodney Deon Walker), Dellovo Capital Corporation, International Lending Group, LLC

and Equity Mortgage Corp. conspired with one another, as described above, to violate 18

U.S.C.§1962(c), in violation of 18 U.S.C.§1962(d).

67.     The Plaintiff has been injured in its business or property by reason of ME&A

Capital, LLC, Deon Walker (aka Rodney Walker aka Rodney Deon Walker), Dellovo

Capital Corporation, International Lending Group, LLC and Equity Mortgage Corp.'s

violation of 18 U.S.C.§1962(c) and 18 U.S.C.§1962(d) in an amount estimated, at present, as a sum not less than $10,000,000.00.

68.     As a result of the defendants' violation of the RICO Act as described above, the Plaintiff is entitled to an award of treble damages together with attorneys' fees and costs of suit as provided for in 18 U.S.C.§1964(c).

## SECOND CAUSE OF ACTION - BREACH OF CONTRACT
### (Against ME&A Capital)

69.     The plaintiff repeats and realleges the allegations of Paragraphs 1 - 68 as if set forth at length herein.

70.     ME&A Capital agreed to provide funding for the loan to the Plaintiff to purchase the Atlantic Beach Hotel not later than October 31, 2010.

71.     The Plaintiff complied with everything required of it in the September 9, 2010 Loan Commitment.

72.     ME&A Capital has breached the September 9, 2010 Loan Commitment by not provided the funding promised, despite having been paid more than $27,000 in fees and expenses.

73.     As a result of ME&A Capital's breach, the Plaintiff has suffered damages, including but not limited to the fees and expenses paid to the Defendants in connection with the loan; the loss of the $175,000 option payment to the Sellers; the loss of profits that would have been obtained through the Plaintiff's operation of the Atlantic Beach Hotel; the

loss of the appreciation in value of the business and the equity in the real estate comprised by the Atlantic Beach Hotel; and other damages in an amount estimated as no less than $10,000,000.

### THIRD CAUSE OF ACTION - FRAUD ("*DOLO*") IN THE PERFORMANCE
### (Against ME&A Capital)

74.    The plaintiff repeats and realleges the allegations of Paragraphs 1 - 73 as if set forth at length herein.

75.    ME&A Capital's actions, including but not limited to its false representations to the Plaintiff concerning the status of the loan funding, constituted fraud ("dolo") in the performance of the September 9, 2010 Loan Commitment, in contravention of 31 L.P.R.A. § 3018 and 3019.

76.    The Plaintiff relied upon ME&A Capital's false representations to its detriment.

77.    As a result of ME&A Capital's fraud, the Plaintiff has suffered damages, including but not limited to the fees and expenses paid to the Defendants in connection with the loan; the loss of the $175,000 option payment to the Sellers; the loss of profits that would have been obtained through the Plaintiff's operation of the Atlantic Beach Hotel; the loss of the appreciation in value of the business and the equity in the real estate comprised by the Atlantic Beach Hotel; and other damages in an amount estimated as no less than $10,000,000.

**FOURTH CAUSE OF ACTION - BREACH OF CONTRACT**
**(Against Dellovo Capital Corporation, International Lending Group, LLC and Equity Mortgage Corp.)**

78.     The plaintiff repeats and realleges the allegations of Paragraphs 1 - 77 as if set forth at length herein.

79.     The Plaintiff contracted with defendants Dellovo Capital Corporation, International Lending Group, LLC and Equity Mortgage Corp. to act as mortgage brokers on its behalf in order to find a suitable and capable lender for its purchase of the Atlantic Beach Hotel.

80.     Defendants Dellovo Capital Corporation, International Lending Group, LLC and Equity Mortgage Corp., in recommending and proffering ME&A Capital as a suitable and capable lender to the Plaintiff, all the time knowing that ME&A Capital did not have the financial capacity or resources to close the loan sought by the Plaintiff, breached their agreement with the Plaintiff to act as the Plaintiff's mortgage broker.

81.      As a result of Dellovo Capital Corporation, International Lending Group, LLC and Equity Mortgage Corp.'s breach, the Plaintiff has suffered damages, including but not limited to the fees and expenses paid to the Defendants in connection with the loan; the loss of the $175,000 option payment to the Sellers; the loss of profits that would have been obtained through the Plaintiff's operation of the Atlantic Beach Hotel; the loss of the appreciation in value of the business and the equity in the real estate comprised by the

Atlantic Beach Hotel; and other damages in an amount estimated as no less than $10,000,000.

## FIFTH CAUSE OF ACTION - NEGLIGENCE
### (Against Dellovo Capital Corporation, International Lending Group, LLC and Equity Mortgage Corp.)

82.      The plaintiff repeats and realleges the allegations of Paragraphs 1 - 81 as if set forth at length herein.

83.      Defendants Dellovo Capital Corporation, International Lending Group, LLC and Equity Mortgage Corp. Held themselves out as and actually acted as mortgage brokers on behalf of the Plaintiff  in order to find a suitable and capable lender for its purchase of the Atlantic Beach Hotel.

84.      In exercising their profession of mortgage brokers, Defendants Dellovo Capital Corporation, International Lending Group, LLC and Equity Mortgage Corp. owed the Plaintiff a duty of care to exercise their function as mortgage brokers reasonably and without negligence.

85.      Defendants Dellovo Capital Corporation, International Lending Group, LLC and Equity Mortgage Corp. breached that duty of care by, among other things, failing to qualify, research and otherwise vet ME&A Capital as a suitable lender with the ability and financial capacity to fund the loan sought by the Plaintiff; by failing to procure a suitable and capable lender to fund the loan sought by the Plaintiff; by failing to advise Plaintiff not

to enter into the Loan Commitment agreement with ME&A Capital due to ME&A Capital's inability to close the loan; and were otherwise negligent, in contravention of Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141.

86.     As a result of the negligence of defendants Dellovo Capital Corporation, International Lending Group, LLC and Equity Mortgage Corp., the Plaintiff has suffered damages, including but not limited to the fees and expenses paid to the Defendants in connection with the loan; the loss of the $175,000 option payment to the Sellers; the loss of profits that would have been obtained through the Plaintiff's operation of the Atlantic Beach Hotel; the loss of the appreciation in value of the business and the equity in the real estate comprised by the Atlantic Beach Hotel; and other damages in an amount estimated as no less than $10,000,000.

### SIXTH CAUSE OF ACTION - DIRECT ACTION AGAINST INSURERS
**(Against ABC Insurance Company, DEF Insurance Company and XYZ Insurance Company)**

87.     The plaintiff repeats and realleges the allegations of Paragraphs 1 - 86 as if set forth at length herein.

88.     Defendants ABC Insurance Company, DEF Insurance Company and XYZ Insurance Company each issued policies of insurance to the other defendants in this case and are liable for the Plaintiff's damages under the terms of those insurance policies which

provide coverage for the defendants' acts, as provided by the Puerto Rico Insurance Code, 26 L.P.R.A. § 2003.

**WHEREFORE**, the Plaintiff demands that judgment be entered in its favor against defendants, jointly and severally, for a sum that fully compensates the Plaintiff for its losses as described above,  together with prejudgment interest, costs and attorney's fees.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury as to all issues so triable.

In San Juan, Puerto Rico, this 5th day of July 2011.

> **CANCIO, NADAL, RIVERA & DÍAZ, PSC**
> P.O. Box 364966
> San Juan, PR 00936-4966
> Tel. (787) 767-9625
> Fax. (787) 764-4430
>
> s/James W. McCartney
> *JAMES W. McCARTNEY*
> USDC-PR No. 211511
> jmccartney@cnrd.com